[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff whose maiden name is Aferdita Mulla and the defendant were married at Waterbury, Connecticut on March 16, 1996. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down CT Page 5741-hb irretrievably without any reasonable prospect of reconciliation. There are no minor children issue of this marriage and the plaintiff does not have any minor children. Neither party has received state assistance.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the defendant is responsible for the breakdown of the marriage.
The plaintiff was born on November 9, 1958. The plaintiff suffers from Hepatitis C which is related to her liver. She has completed one year of college.
The plaintiff is an account executive at Washington Mutual. Her gross weekly income is $983.56. She does not have any liabilities. She owns property located at 76 Jillson Circle, Waterbury, Connecticut. The fair market value of that property is $133,000. It has a mortgage with a balance of $131,500 and an equity of $1,500. She also owns a 1994 Ford Escort. She owns furniture and appliances with a total value of $6,000. She has $100 in her checking account.
The plaintiff's financial affidavit dated January 22, 2001, lists as a weekly expense an auto loan in the amount of $58. That auto loan is for the plaintiff's daughter. The loan was not co-signed by the plaintiff.
Between 1998 and 2001 the plaintiff's mother made various loans to the parties, some of which was used for the defendant's business and some was used for the personal expenses for the plaintiff and the defendant. The amount actually used for the defendant's business has not been proven. The plaintiff's mother loaned the parties $1,000 for their wedding which has since been repaid. In February 1998, the plaintiff's mother loaned the parties $8,000 that was deposited into the defendant's business account. The defendant's business account was used both for the payment of his business expenses as well as for the payment of personal and household expenses for the parties. In July 1998, the plaintiff repaid her mother $4,000 of the $8,000 owed to the plaintiff's mother. On June 14, 1999, the plaintiff paid to her mother the remaining balance of $4,000. The first $4,000 paid by the plaintiff to her mother came from a loan that the plaintiff obtained against her 401k account. The plaintiff cashed in her 401k account in order to pay her mother the remaining $4,000 that was due.
In early February 1999, the plaintiff obtained a second mortgage home improvement loan in the amount $20,000. The defendant felt that new vinyl siding on the home would better insulate the home. The home improvement CT Page 5741-hc loan was used for vinyl siding, a stone wall and new doors. The monthly payments on the home improvement loan was $241. The application for the loan was signed by both the plaintiff and the plaintiff's mother. The defendant represented to the plaintiff's mother that he would pay off the loan in six months. He commenced to make payments on the loan and then fell behind in the payments. After the defendant vacated the family home in the end of October 1999, he stopped making payments on any of the various outstanding loans for window purchase, furniture, and on the second mortgage. The plaintiff was unable to keep the loans current and filed for bankruptcy and was discharged in bankruptcy in March 2000. The plaintiff's mother was required to pay off the balance of the second mortgage home improvement loan in the amount of $15,776. The defendant represented to the plaintiff's mother when she was asked to co-sign for the second mortgage home improvement loan that he was on target to have gross annual earnings of $30,0000. That representation was not accurate.
The defendant was born on December 5, 1961. The defendant graduated from Norwalk Community College.
The defendant suffers from anxiety and stress problems. He has been operated on for both knees. He suffers from ulcers and severe insomnia. He has problems at times in walking. His health is generally fair.
The defendant is a self-employed employment agent. He has gross weekly income of $750. He has liabilities consisting of Capitol One Visa with a balance of $2,000, Providian Visa with a balance of $1,800, a personal loan from a friend with a balance of $15,000 and a second personal loan from a friend with a balance of $7,500. He owns a 1998 Ford Contour with a value of $4,000 and a loan balance of $7,000. He also owns a 1998 Ford Windstar with a value of $8,900 and a loan balance of $13,500. He owns personal property and household furnishings with a total value of $4,500. He has a checking account at People's Bank with a balance of $1,000. He also owns four shares of Celtics Stock with a value of $3,600. Although not shown on his financial affidavit, he owns business equipment with a fair market value between $3,000 and $4,000.
The defendant owns a residence that is located at 759 High Street Extension, Thomaston, Connecticut. The home was purchased on the November 30, 1999 for a total purchase price of $95,000. The seller gave the defendant a $4,000 closing cost credit. The defendant obtained a mortgage in the face amount of $85,000. The amount needed to complete the closing was $8,742 which was paid from his business income. The court finds that the home has a fair market value of $114,000, a mortgage balance of $85,000, and an equity of $29,000. CT Page 5741-hd
The family home located at 76 Jillson Street, Waterbury, Connecticut was purchased in April, 1998. The parties lived together in that property from April, 1998 until November, 1999 when the defendant vacated the home. The home was purchased in the plaintiff's name only due to the defendant's prior bankruptcy and the fact that the defendant did not have two years of tax records for his business. The plaintiff obtained a $7,200 loan from her employer to be used towards the down payment on the home. That loan has since been repaid by the defendant from his business account. The plaintiff obtained a $133,000 loan for the purchase of the property, $112,500 of which was actually used for the purchase price with a balance of $20,500 used for renovations of the property and refurbishment of the property.
In April 1998 after the home was purchased, the parties also purchased furniture and carpeting for the home. In 1999 the plaintiff took out a second mortgage on the family home in the face amount of $2,300. That loan has since been repaid.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issue of property division, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS
A. BY WAY OF DISSOLUTION
 1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. BY WAY OF ALIMONY
 1. Neither party is ordered to pay periodic or lump sum alimony to the other.
 2. The defendant is ordered to pay to the plaintiff alimony of $1 per year for indemnification purposes only under the provisions of C10 of these orders. The plaintiff is ordered to pay to the defendant alimony of $1 per year for indemnification purposes only under the CT Page 5741-he provisions of paragraph C10 of these orders. It is the intent of these orders that the indemnification provisions not be dischargeable in bankruptcy.
 3. The plaintiff is to cooperate with the defendant for the defendant to obtain COBRA health insurance benefits at his sole expense if he so elects.
C. BY THE WAY OF PROPERTY ORDERS
 1. The defendant is to pay all the liabilities shown on his financial affidavit and hold the plaintiff harmless therefrom.
 2. All of the defendant's interest in the real estate located at 759 High Street Extension, Thomaston, Connecticut is awarded to the defendant.
 3. The 1998 Ford Contour and the 1998 Ford Windstar shown on the defendant's financial affidavit are both awarded to the defendant. The plaintiff is to transfer to him all of her right, title and interest in those vehicles. The defendant is responsible for paying each of the loan balances on the two vehicles and hold the plaintiff harmless therefrom.
 4. All of the personal property and household furnishings and business equipment in the possession of the defendant are awarded to the defendant. The defendant is also awarded ownership of his employment agency.
 5. The People's checking account shown on the defendant's financial affidavit as well as the four shares of Celtic Stock are awarded to the defendant.
 6. The real estate located at 76 Jillson Circle, Waterbury, Connecticut is awarded to the plaintiff. She is to pay the mortgage balance and hold the defendant harmless therefrom. CT Page 5741-hf
 7. Whatever interest the plaintiff has in the 1994 Ford Escort shown on her financial affidavit is awarded to the plaintiff.
 8. All of the furniture, furnishing and appliances in the possession of the plaintiff are awarded to the plaintiff.
 9. The Webster checking account shown on the plaintiff's financial affidavit is awarded to the plaintiff.
 10. The defendant is to pay to the plaintiff the sum of $4,000 representing one-half of the $8,000 that she repaid to her mother. Said $4,000 is to be paid at the rate of $80 per week commencing June 1, 2001 and each week thereafter without interest. In the event any of the payments are more than one week in arrears, an interest is to run on the unpaid balance of 8% per annum. In addition, the defendant is to pay to the plaintiff the sum of $7,888 representing one-half of the second mortgage sum that the plaintiff's mother repaid. Said $7,888 is to be paid at the rate of $100 per week commencing July 1, 2002 and each week thereafter. The plaintiff is to hold the defendant harmless from the balance of $7,888, which balance she is to pay to her mother. Upon receipt by the plaintiff of each weekly $100 payment from the defendant, she is to pay to her mother the sum of $200.
D. BY WAY OF ATTORNEY'S FEES
 1. No attorney's fees are awarded in favor of either party.
E. MISCELLANEOUS ORDERS
 1. Counsel for the plaintiff is to prepare the judgment file within thirty days and send it to counsel for the defendant for signature and filing.
 2. The defendant is to provide the plaintiff with a copy of his CT Page 5741-hg federal and/or state income tax returns by certified mail/return receipt or registered mail/return receipt within thirty days after such returns have been filed for so long as there is an outstanding hold harmless obligation by him under paragraph C10 of this decision.
 3. The plaintiff is to provide the defendant with a copy of her federal and/or state income tax return by certified mail/return receipt or registered mail/return receipt within thirty days after such returns have been filed for so long as there is an outstanding hold harmless obligation by her under paragraph C10 of this decision.
AXELROD, J.